IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| HENRY BELLOIR, | ) |
|     Plaintiff, | ) |
| | ) Docket No. |
| v. | ) |
| | ) COMPLAINT |
| | ) |
| ELLIOT HOSPITAL OF THE | ) |
| CITY OF MANCHESTER, | ) JURY TRIAL DEMANDED |
| | ) |
|     Defendant. | ) |

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiff, HENRY BELLOIR, seeks relief for the Defendant's violation of the Americans with Disabilities Act, Title II, 42 USC § 12131, *et. seq.,* Title III, 42 USC § 12181 *et. seq.,* the Rehabilitation Act, 29 USC § 794, Section 504, and violations of various other Federal and State laws, including negligence, breach of contract and intentional infliction of emotional distress that are supplemental to the federal claims, in that Defendant did, intentionally and willfully, neglect and deprive HENRY BELLOIR of essential services and supports necessary for his mental, emotional and physical health and safety. Specifically, Defendant failed to provide an American Sign Language interpreter or any other adequate, meaningful communication during a six (6) day, emergent hospital stay involving invasive and painful hernia surgery. Plaintiff, HENRY BELLOIR, seeks compensatory and punitive damages, the award of costs, interest and attorneys' fees, and such other and further relief as the law allows and this Court deems equitable, just and appropriate.

**JURISDICTION**

2. This Court has Federal Question Jurisdiction pursuant to 28 U.S.C.§ 1331 as this action is based upon two important federal statutes: the Americans with Disabilities Act, Title II, 42 USC § 12131, *et seq.* and Title III, 42 USC § 12181, *et seq.* and the Rehabilitation Act, 29 USC §794, Section 504.

3. The Plaintiff requests that this Court exercise supplemental jurisdiction over the State court causes of action named herein as they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. §1391(b) and (c) as the Defendant's medical facility is based in New Hampshire, Plaintiff, HENRY BELLOIR, was, at all relevant times, a New Hampshire resident and the core nucleus of operative facts occurred within this venue.

## JURY TRIAL DEMANDED

5. Plaintiff demands a trial by jury on each of the causes of action.

## PARTIES

6. HENRY BELLOIR was, at all times relevant to this suit, a resident of 604 Chester Pike, Candia, New Hampshire. HENRY BELLOIR is prelingually, profoundly deaf with associated language deprivation who communicates in American Sign Language. HENRY BELLOIR is, and at all times relevant to this action was, a qualified individual with disabilities under the definitions of the Rehabilitation Act and the Americans with Disabilities Act.

7. The Defendant, ELLIOT HOSPITAL OF THE CITY OF MANCHESTER, is an integrated medical services provider receiving federal funds and participating in federal programs. ELLIOT HOSPITAL has a principal office address located at 955 Auburn Street, Manchester, New Hampshire, 03103.

## DISCRIMINATION IS UNLAWFUL

8. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*, establishing the most important civil rights legislation for persons with disabilities in our nation's history. Prior to that historic act, and recognizing the challenges faced by the disabled in trying to live

dignified, vital lives within their surrounding communities, Congress passed the Rehabilitation Act of 1973 to protect qualified disabled individuals from discrimination.

9. These federal laws relate to the care and treatment of persons with disabilities and require that certain entities, including ELLIOT HOSPITAL, provide services appropriate to the needs of qualified individuals with disabilities; ensure that such services are meaningfully accessible; make reasonable modifications in their policies, practices and procedures to avoid discrimination on the basis of disability, unless it would result in a fundamental alteration of the program; and provide auxiliary aids to persons with disabilities, at no extra cost, where necessary to afford equal opportunity to participate in or benefit from a program or activity.

10. Additionally, 29 USC §701 states in its "Findings, Purpose and Policy," that as a matter of national policy and importance, directly applicable in the instant case, the United States Congress has found that:

    (1) millions of Americans have one or more physical or mental disabilities and the number of Americans with such disabilities is increasing;

    (2) individuals with disabilities constitute one of the most disadvantaged groups in society;

    (3) disability is a natural part of the human experience and in no way diminishes the right of individuals to

        (A) live independently;
        (B) enjoy self-determination;
        (C) make choices;
        (D) contribute to society;
        (E) pursue meaningful careers; and
        (F) enjoy full inclusion and integration in the economic, political, social, cultural, and educational mainstream of American society; …

    (4) individuals with disabilities continually encounter various forms of discrimination in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and public services; and

    (5) the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to

        (A) make informed choices and decisions; and

(B) achieve equality of opportunity, full inclusion and integration in society, employment, independent living, and economic and social self-sufficiency, for such individuals.

(b) Purpose

The purposes of this chapter are

(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society …

(c) Policy

It is the policy of the United States that all programs, projects, and activities receiving assistance under this chapter shall be carried out in a manner consistent with the principles of

(1) respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities;

(2) respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals;

(3) inclusion, integration, and full participation of the individuals;

(4) support for the involvement of an individual's representative if an individual with a disability requests, desires, or needs such support; and

(5) support for individual and systemic advocacy and community involvement.

11. ELLIOT, through discriminatory policies, practices, both actual and de facto, as well as through acts and omissions with respect to HENRY BELLOIR's most basic needs, rights and earnest desire to communicate meaningfully, violated the mandate of the people's representatives that all people, including those with disabilities, be treated with dignity and respect.

## **FACTS**

12. HENRY BELLOIR is profoundly, prelingually deaf. He communicates through American Sign Language. Additionally, HENRY BELLOIR has a severely limited ability to read and write English, as his deafness has resulted in what is commonly known as "language deprivation."

13. On December 7, 2011, HENRY BELLOIR was experiencing a painful bulge in his stomach. He used his videophone to communicate with his doctor's office and was told to go to the Emergency Department of his closest hospital, the Defendant ELLIOT HOSPITAL.

14. HENRY BELLOIR was in the Emergency Department at the Defendant ELLIOT Hospital for several hours when he was finally given "something" to drink by hospital staff. As no American Sign Language interpreter was present, despite the lengthy wait, HENRY BELLOIR doesn't know what it was or what it was for, but, hopeful for help, he drank it. It appears to have been some type of contrast dye given in advance of a CT scan. No one at the hospital could explain to HENRY BELLOIR what was happening or why no certified American Sign Language interpreter was used. To this day, HENRY BELLOIR is uncertain of exactly why and how his treatment was medically necessary. Though he signed whatever forms were put in front of him, hoping for something to ease his pain, what they were doing was not explained in a manner he could understand.

15. Some four hours later, an ELLIOT physician performed emergency hernia surgery on HENRY BELLOIR. HENRY BELLOIR did not know why, and does not know why to this day, this surgery was needed. HENRY BELLOIR was operated on and spent six (6) days in the Defendant ELLIOT Hospital. He was discharged, but never told in any way he could understand what had been done. He was denied the aid of a qualified American Sign Language interpreter, despite the fact that he is, and was at all relevant times, profoundly, prelingually deaf and able to communicate, meaningfully, only through American Sign Language.

16. At one point during HENRY BELLOIR's stay at the Defendant ELLIOT HOSPITAL, hospital personnel, clearly lacking any significant training, unsuccessfully attempted to utilize Deaf Talk. Deaf Talk is a webcam-like device that provides video linked remote sign language interpreting. Six members of the hospital staff attempted for 20 minutes to get Deaf Talk to work and, unable to do so, simply gave up, leaving HENRY BELLOIR in a total information vacuum, frightened and vulnerable.

17. Nursing, emergency department and other Defendant notes and records indicate that hospital staff "explained" procedures to HENRY BELLOIR, and that he completely understood. HENRY BELLOIR does not, and at all relevant times did not, communicate through lip reading, written or spoken English. HENRY BELLOIR used and uses American Sign Language exclusively. HENRY BELLOIR's prelingual deafness has left him with a significant English language deficient. Understanding spoken or written English, especially with medical terms and in such a stressful environment, is impossible for HENRY BELLOIR.

18. In short, despite being aware of HENRY BELLOIR's disability, despite HENRY BELLOIR's repeated requests for an interpreter, despite failed technology, ELLIOT Hospital treated this disabled gentleman without the human decency mandated by law. ELLIOT physicians and staff cut him open without explanation or meaningful consent, kept him for six days without the opportunity to communicate anything beyond the simplest base needs and then discharged him without any meaningful explanation as to what had happened or how to care for himself after surgery.

19. ELLIOT has received numerous complaints of similar, deplorable treatment from countless Deaf individuals over the years, having treated some 14,457 hearing impaired individuals since 2007 during 30,510 encounters. At the time of HENRY BELLOIR's "treatment," ELLIOT was actively engaged in negotiations with the United States Department of Justice as to a comprehensive plan, and settlement agreement, to provide more appropriate treatment and meaningful communication to the Deaf and Hard-of-Hearing. Despite this knowledge, ELLIOT intentionally violated HENRY BELLOIR's basic civil right to participate in his own medical treatment.

## **FEDERAL CLAIMS**

### **COUNT I**

### **DEFENDANT ELLIOT HOSPITAL VIOLATED TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 USC §12181 et seq**

20. Plaintiff re-alleges and incorporates by reference the allegations of facts in all preceding paragraphs.

21. Plaintiff's deafness and language deprivation substantially limit major life activities, including his ability to effectively communicate. Therefore, Plaintiff is an individual with a disability under Title III of the Americans with Disabilities Act. The Plaintiff met the essential eligibility requirements for Defendant's services at all relevant times. Thus, the Plaintiff is a qualified individual with a disability and entitled to the protections of the Americans with Disabilities Act under 42 USC § 12181, *et seq*.

22. As ELLIOT was aware, or should have been aware, of the risk that failing to provide meaningful communication might violate Plaintiff's civil rights, Defendant ignored that risk and intentionally violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when they:

- (a) Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access and effective communication to individuals with disabilities;

- (b) Failed to properly train and supervise its employees and agents as to how to provide meaningful communication to the Deaf and Hard-of-Hearing;

- (c) Failed to ensure that communications with the Plaintiff were as effective as communications with non-disabled patients;

- (d) Failed to provide auxiliary aids and services, including a qualified interpreter, and to modify policies and procedures to prevent discrimination against the Plaintiff;

- (e) Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as an individual with a disability under the Americans with Disabilities Act;

- (f) Failed to properly determine HENRY BELLOIR's need for an auxiliary aid, service or interpreter; and

- (g) Excluded Plaintiff from services of the public entity and denied Plaintiff the benefit of these services due to their disability.

23. Defendant's violations of Title III of the Americans with Disabilities Act are the proximate cause of damages to Plaintiff, including lack of communication, emotional distress and other damages.

## COUNT II

### DEFENDANT ELLIOT HOSPITAL VIOLATED SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 706

24. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

25. Plaintiff is profoundly, prelingually deaf and language deprived. These disabilities substantially limit major life activities, including his ability to effectively communicate with others who do not know American Sign Language. Therefore, Plaintiff is considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. §706(8). Plaintiff is otherwise qualified under Section 504 of the Rehabilitation Act because he meets the essential eligibility requirements for Defendant's services at all times material hereto. Further, the Defendant is a recipient of federal financial assistance.

26. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

27. Additionally, the Defendants also denied Plaintiff services that it made available to non-disabled patients.

28. Defendant violated Plaintiff's rights through its repeated refusal to reasonably accommodate Plaintiff with appropriate auxiliary aids and services or to modify its policies and procedures to prevent discrimination.

29. Defendant's violations of Section 504 are the proximate cause of damage to the Plaintiff.

## STATE CLAIMS

### COUNT III

### VIOLATION OF THE CONSUMER PROTECTION ACT
### NH RSA 358-A

30. Plaintiff re-alleges and incorporates by reference the allegations of facts contained in every preceding paragraph.

31. Defendant ELLIOT HOSPITAL is, and at all relevant times was, engaged in trade and commerce within the State of New Hampshire in that it is one of the largest providers of healthcare and healthcare related products and services in the State. Plaintiff was a consumer of these healthcare products and services.

32. NH RSA 358-A:2 provides, in pertinent part, that:

> It shall be unlawful for any person to use…any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such…unfair or deceptive act or practice shall include, but is not limited to, the following: …
> II. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

33. ELLIOT HOSPITAL violated these statutory standards by failing to provide any meaningful communication to HENRY BELLOIR, thereby knowingly and willfully creating a high likelihood of confusion and misunderstanding. Further, the conduct described above was knowingly false, deceptive and unfair.

34. As a proximate result of Defendant's action, Plaintiff suffered damages.

## COUNT IV

## BREACH OF CONTRACT

35. Plaintiff re-alleges and incorporates by reference the allegations of facts contained in every preceding paragraph.

36. The Defendant had express and implied contractual obligations to the Plaintiff to provide him with professional services that included assisting him effectively and appropriately with his disability.

37. At all times relevant to this action, the Defendant failed to meet its contractual obligations to the Plaintiff by failing to provide him at all appropriate and necessary times and places, without legal excuse for not doing so, with appropriate and reasonable interpreters and means of meaningful communication.

38. Wholly unmindful of these duties and obligations, that Defendants breached their duties to the Plaintiff as set forth above by repeatedly failing to provide interpreters when needed and required and failed generally to provide the services to the Plaintiff as required by law. As a result of Defendant's actions, Plaintiff suffered damages.

## COUNT V

## NEGLIGENCE

39. Plaintiff re-alleges and incorporates by reference the allegations of facts contained in every preceding paragraph.

40. The Defendant had duties of care to the Plaintiff to assist him to provide appropriate support and services and guidance in dealing with his disability, in communicating and understanding important medical information concerning his health and well-being, developing skills to cope with his life challenges and affording him simple dignity.

41. At all times relevant to this action, the Defendant breached its duties of care to the Plaintiff by failing to provide him at all appropriate and necessary times and places, without legal excuse for not doing so, with appropriate and reasonable interpreters and meaningful means of communication.

42. Wholly unmindful of these duties and obligations, Defendant breached its duties of care to the Plaintiff as set forth above by repeatedly failing to provide interpreters when needed and required and failed generally to provide the services to the Plaintiff. As a result of Defendant's actions, Plaintiff suffered damages.

## COUNT VI

## NEGLIGENT SUPERVISION AND TRAINING

43. Plaintiff re-alleges and incorporates by reference the allegations of facts contained in every preceding paragraph.

44. The Defendant had a duty to provide appropriate training, guidance, supervision and education to its employees and agents about providing meaningful communication to the Deaf and Hard-of-Hearing and their duties under the Americans with Disabilities Act generally. This duty is particularly important

given that Defendant's employees and agents were providing Plaintiff with important medical information concerning his health and well-being.

45. Despite being aware, through 42 U.S.C.A. § 12115, which requires facilities such as Defendant to post ADA information, ELLIOT's ongoing receipt of complaints from Deaf patients about communication, and negotiations with the United States Attorney, of its duty to properly train and supervise, the Defendant breached this duty. ELLIOT's employees and agents were so poorly trained they were not even able to work the one and only assistive device for the Deaf at the hospital, Deaf Talk.

46. Wholly unmindful of these duties and obligations, Defendant breached its duty. As a proximate result of Defendant's actions, Plaintiff suffered damages.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

48. The Defendant and its officers, administrators, managers and employees had, or should have had, knowledge of Plaintiff's disability and his needs, however, and notwithstanding that knowledge, the Defendant and its officers, administrators, managers and employees intentionally deprived Plaintiff of his rights, injured the Plaintiff, and discriminated against the Plaintiff.

49. The Defendant and its officers, administrators, managers and employees had, or should have had, knowledge of their responsibility to provide communicative aids to the Plaintiff.

50. As a result of the Defendant's outrageous acts and omissions, intentional and deliberately indifferent acts and omissions, the Defendant intentionally inflicted emotional distress unto the Plaintiff.

51. As a proximate result of the Defendant's actions, Plaintiff suffered damages.

# COUNT VIII

## DEFENDANT ELLIOT HOSPITAL VIOLATED THE PATIENTS' BILL OF RIGHTS
## NH RSA 151:21

52. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

53. New Hampshire's legislature encoded a Patients' Bill of Rights in RSA 151:21 creating duties every hospital, including Defendant, must abide by in treating patients, including the disabled. In pertinent part, this Bill of Rights provides that:

> I. The patient *shall be treated with consideration, respect, and full recognition of the patient's dignity and individuality*, including privacy in treatment and personal care and including being *informed* of the name, licensure status, and staff position of all those with whom the patient has contact, pursuant to RSA 151:3-b.
>
> II. The patient *shall be fully informed* of a patient's rights and responsibilities and of all procedures governing patient conduct and responsibilities. This information must be provided orally and in writing before or at admission, except for emergency admissions. Receipt of the information must be acknowledged by the patient in writing. When a patient lacks the capacity to make informed judgments the signing must be by the person legally responsible for the patient.
>
> III. The patient *shall be fully informed* in writing *in language that the patient can understand*, before or at the time of admission and as necessary during the patient's stay, of the facility's basic per diem rate and of those services included and not included in the basic per diem rate. A statement of services that are not normally covered by medicare or medicaid shall also be included in this disclosure.
>
> IV. The *patient shall be fully informed by a health care provider of his or her medical condition, health care needs, and diagnostic test results*, including the manner by which such results will be provided and the expected time interval between testing and receiving results, unless medically inadvisable and so documented in the medical record, and *shall be given the opportunity to participate in the planning of his or her total care and medical treatment*, to refuse treatment, and to be involved in experimental research upon the patient's written consent only. For the purposes of this paragraph "health care provider" means any person, corporation, facility, or institution either licensed by this state or otherwise lawfully providing health care services, including, but not limited to, a physician, hospital or other health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, or psychologist, and any officer, employee, or agent of such provider acting in the course and scope of employment or agency related to or supportive of health care services…

VI. The patient shall be encouraged and *assisted* throughout the patient's stay to exercise the patient's rights as a patient and citizen. The patient may voice grievances and recommend changes in policies and services to facility staff or outside representatives free from restraint, interference, coercion, discrimination, or reprisal.

VIII. The patient *shall be free from emotional, psychological*, sexual and physical abuse and from exploitation, *neglect*, corporal punishment *and involuntary seclusion*…

XII. The patient *shall be free to communicate* with, associate with, and meet privately with anyone, including family and resident groups, unless to do so would infringe upon the rights of other patients. The patient may send and receive unopened personal mail. The patient has the right to have regular access to the unmonitored use of a telephone.

XIII. The *patient shall be free to participate* in activities of any social, religious, and community groups, unless to do so would infringe upon the rights of other patients…

XVI. The patient shall not be denied appropriate care on the basis of race, religion, color, national origin, sex, age, *disability*, marital status, or source of payment, nor shall any such care be denied on account of the patient's sexual orientation.

(Emphasis added).

54. The Defendant and its officers, administrators, managers and employees had, or should have had, knowledge of both this Patients' Bill of Rights and Plaintiff's disability, yet, notwithstanding that knowledge, the Defendant breached, by the conduct described above, these duties, and others, depriving Plaintiff of these rights, and others, injuring the Plaintiff and discriminating against him.

55. As a proximate result of Defendant's actions, Plaintiff suffered damages.

## COUNT IX

## BATTERY

56. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

57. ELLIOT, through its employees and agents, particularly the physician who operated upon HENRY BELLOIR, did knowingly or intentionally commit offensive contact against Plaintiff. That contact offended HENRY BELLOIR's personal dignity, when, without gaining proper informed consent, ELLIOT's employees and agents did treat and operate upon Plaintiff.

58. As a proximate result of Defendant's actions, Plaintiff suffered damages.

## COUNT X

## FALSE IMPRISONMENT

59. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

60. ELLIOT, through its employees and agents, acted with the intent of confining HENRY BELLOIR without his meaningful consent. ELLIOT's employees and agents actions directly resulted in HENRY BELLOIR's confinement. HENRY BELLOIR was conscious of his confinement and harmed by the nature of it, that is being held in pain without explanation or ability to communicate with hospital staff. ELLIOT did not have legal authority to confine Plaintiff.

61. As a proximate result of Defendant's actions, Plaintiff suffered damages.

## COUNT XI

## RESPONDEAT SUPERIOR

62. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

63. The conduct alleged above by the agents, employees, physicians, nurses, officers and managers of ELLIOT occurred during the course and scope of their duties and functions as agents and employees of Defendant ELLIOT HOSPITAL, and, as a result, ELLIOT HOSPITAL is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

## COUNT XII

## ENHANCED COMPENSATORY DAMAGES

64. Plaintiff re-alleges and incorporates by reference the allegations of facts in every preceding paragraph.

65. All of the causes of action above were caused by the conduct, either directly or indirectly, of the Defendant ELLIOT HOSPITAL and did proximately result in actual damage to the Plaintiff. All of the causes of action above were the result of the Defendant's wanton, malicious or oppressive conduct. As a result, Plaintiff is entitled to enhanced or liberal compensatory damages.

WHEREFORE, the Plaintiff respectfully prays that this Court grant the following relief against the Defendants:

- A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant ELLIOT HOSPITAL's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973;
- B. Permanently enjoin Defendants from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff effective communication with Defendant. This includes entering a permanent injunction ordering Defendant:
    1. To cease discrimination against Plaintiff and other Deaf or Hard-of-Hearing patients;
    2. To promulgate and comply with policies and procedures to ensure that Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;
    3. To promulgate and comply with procedures to ensure that Defendant will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendant;
    4. To promulgate and comply with procedures to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that state that the Defendant will provide sign language interpreters, TTYs and/or other communication services to ensure effective communication with deaf or hard of hearing persons;
- C. Schedule a trial by jury;

D. Enter a judgment in favor of Plaintiff HENRY BELLOIR awarding any and all relief available under law to the maximum extent allowed by common law, state and federal statutes, and the Constitution of New Hampshire and the United States of America, including but not limited to the following:

1. Compensatory damages;

2. Treble damages pursuant to NH RSA 358-A:10;

3. Enhanced Compensatory damages;

4. Punitive damages;

5. All damages available pursuant to NH RSA 151:30;

6. Reasonable costs, interest and attorneys' fees; and,

E. Award any and all other relief that may be just, necessary and appropriate.

Respectfully submitted,

HENRY BELLOIR

By his attorneys,

NIXON, VOGELMAN, BARRY,
SLAWSKY & SIMONEAU, P.A.

Dated: July 26, 2013       By:    */s/*    Kirk C. Simoneau (#19291)
                                  77 Central Street
                                  Manchester, NH 03101
                                  (603) 669-7070
                                  *ksimoneau@davenixonlaw.com*